**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

IN RE

BRITTANY R. THOMAS                                                         CASE NO. 17-20527
ANDREW A. THOMAS

DEBTORS                                                                              CHAPTER 13

**MEMORANDUM OPINION AND ORDER
DENYING MOTIONS TO FILE UNDER SEAL**

Parties who settled an adversary proceeding have asked the Court to restrict public access to settlement-related documents filed in the record because they agreed to keep their settlement terms confidential. In fact, they suggest that the settlement will "blow up" if the Court does not seal the documents. But the parties have failed to show that they are entitled to this extraordinary relief, and the Court rejects the proffered "no seal, no deal" position.

Debtor Brittany R. Thomas filed a class-action lawsuit in this Court (Adv. No. 17-2024) against AT&T Corp. and DirecTV, LLC (the "AP Defendants"). Debtor quickly settled her individual claims with the AP Defendants. Debtor then moved the Court in her chapter 13 bankruptcy case to approve the settlement under Federal Rule of Bankruptcy Procedure 9019[1] and provided a copy of the fully-executed Settlement Agreement to the Court for review. And, because the parties want to keep the terms of their settlement confidential, Debtor also filed two motions [ECF Nos. 32, 39)] (the "Seal Motions") to seal the Settlement Agreement and a related explanatory memorandum in the record in this case.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ____."

As explained below, documents in a bankruptcy court's record are presumptively accessible to the public. 11 U.S.C. § 107(a). The parties have failed to establish a basis to seal the records at issue under § 107(b); therefore, the Seal Motions will be denied.

## BACKGROUND

Co-Debtors Brittany Thomas and Andrew Thomas filed a chapter 13 bankruptcy petition on April 19, 2017. Just over seven months later, Debtor Brittany Thomas filed an adversary proceeding against the AP Defendants, alleging generally that they engaged in a repeated course of conduct that violated the automatic stay under § 362:

> Defendants purposely disregard the Bankruptcy Code and illegally collect or attempt to collect amounts from debtors, which they are prohibited from collecting. Defendants' routine and persistent attempted collection and/or collection of prepetition obligations from debtors, are an abuse of process and are in violation of the automatic stay provided to Chapter 13 Debtors by Section 362(a) of the United States Bankruptcy Code ("Code").

[AP No. 17-2024, ECF No. 1 ¶ 2.] Not only did Debtor seek to proceed on her own behalf against the AP Defendants, she filed her Complaint as a proposed class action on behalf of "[a]ll persons who entered into contracts for telecommunication services or satellite television services, with [the AP Defendants] between April 19th 2012 and the present, who filed then filed *[sic]* a Chapter 13 bankruptcy petition in the Eastern District of Kentucky and who received documents which substantially conform to" documents sent to Debtor. [*Id*. ¶ 34.]

About seven weeks after Debtor filed her Complaint, however, the parties filed a Notice of Settlement in the adversary proceeding. In her chapter 13 bankruptcy case, Debtor filed her first Seal Motion [ECF No. 32] and filed the fully-executed Settlement Agreement in the record under a provisional seal for the Court's review; it reflects a settlement between the AP

Defendants and Debtor individually respecting the claims in the adversary proceeding.[2] Shortly thereafter, Debtor filed a Motion to Compromise Controversy Under Rule 9019 with AT&T Corp. and DirecTV, LLC [ECF No. 35] ("Motion to Compromise"). Stating that Debtor and the AP Defendants "have entered into the Settlement Agreement and Release which will be filed under seal with the Court," Debtor asked the Court "to approve the [Settlement] Agreement and retain jurisdiction to enforce its terms." [*Id.* ¶¶7, 9.]

In other words, Debtor halted her class action lawsuit in favor of a quick settlement of her own claims. Because she sought to settle post-petition claims that are property of her chapter 13 bankruptcy estate under § 1306(a)(1), Debtor moved the Court to approve the settlement. Thus, the Court must "determine if the settlement is fair and equitable based on the facts of the case." *In re Equine Oxygen Therapy Res., Inc.*, Case No. 14-51611, 2015 Bankr. LEXIS 900, at *5 (Bankr. E.D. Ky. March 20, 2015) (citations omitted). The public has a right to know the basis for the Court's decision on that motion. "This policy of open inspection, established in the Bankruptcy Code itself, is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised." *In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984); *see also Geltzer v. Anderson Worldwide, S.C.*, Case No. 05 Civ. 3339 (GEL), 2007 U.S. Dist. LEXIS 6794, at *13 (S.D.N.Y. Jan. 30, 2007) (stating that the public is entitled to "monitor the appropriateness of the Court's decision" to approve a settlement).[3]

---

[2] The Settlement Agreement requires Debtor to move the Court: (a) to approve the Settlement Agreement; and (b) to seal the Settlement Agreement. Debtor has done so.

[3] *See also In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007) (where a party is acting on behalf of another "[t]he public interest in openness of court proceedings is at its zenith."); *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.").

3

Debtor's first Seal Motion with respect to the Settlement Agreement quotes § 107(b) and Bankruptcy Rule 9018,[4] but does not mention the primary right of public access codified in § 107(a). Debtor inaccurately avers that "a bankruptcy court may enter a seal order under the broad confidentiality protections in bankruptcy proceedings where necessary to protect confidential information." [ECF No. 32 ¶ 14, *citing In re Global Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y 2003).[5]] Debtor claims that "[t]he Settlement Agreement contains settlement terms, the confidentiality of which form the basis of the settlement. Due to the confidential and sensitive nature of the Settlement Agreement, the Debtor respectfully submits that no alternative method would adequately protect the Settlement Agreement." [*Id*. ¶ 16.] Debtor also reports that she "has delivered copies of the Settlement Agreement to the Court for *in camera* review, and either have *[sic]* delivered, or will deliver the Settlement Agreement to the Chapter 13 Trustee on a confidential basis." [*Id*. ¶ 17.]

Importantly, Debtor's motion does not offer any evidence to show that the Settlement Agreement falls within a category of documents subject to protection from disclosure under § 107(b). Debtor's tendered order (1) does not contain any findings of fact or conclusions of

---

[4] "On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information …." FED. R. BANKR. P. 9018.

[5] In *In re Global Crossing*, the debtors asked the bankruptcy court to "hear evidence relating to proceedings before the Committee of Foreign Investment in the United States ("CFIUS") *in camera*," and to exclude the debtors' competitors from the hearing. 295 B.R. at 722. The evidence asked to be presented *in camera* was to include sensitive national security information and competitive information such that disclosure would cause commercial damage to the debtors; the debtors had "made a showing that [their competitors had] expressed an interest in acquiring the Debtors or their assets, and would have an interest in CFIUS denying approval of the now pending transaction" between the debtors and a purchaser. *Id*.

The Court questions Debtor's citation to *Global Crossing* with respect to when it is appropriate for a court to enter a seal "where necessary to protect confidential information" given the profound factual differences between *Global Crossing* and the instant matter. Citation to *Global Crossing* is particularly troublesome given that authority exists that is much more factually analogous to this matter, as discussed in detail below.

law,[6] and (2) would seal the entire Settlement Agreement in perpetuity pending a subsequent Court order. [ECF No. 32-1.]

Following an initial review of the two motions and the Settlement Agreement, the Court entered an Order scheduling a hearing, stating:

> The proposed order tendered with the Seal Motion [ECF 32-1] provides that the Settlement Agreement will be sealed in perpetuity absent party consent to unseal or a subsequent Court order. The proposed order does not contain any findings and conclusions that justify nondisclosure to the public, even though the Sixth Circuit requires such findings and conclusions and has held "[t]he public has a strong interest in obtaining the information contained in the court record." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176. 1180 (6th Cir. 1983); *see also Shane Group, Inc., et al. v. Blue Cross Blue Shield of Mich., et al.*, 825 F.3d 299 (6th Cir. 2016); *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589 (6th Cir. 2016); *c.f. In re Reynolds*, No. 04-70259, ECF No. 111 (Bankr. E.D. Ky. May 19, 2017).
>
> In addition, the Motion to Compromise does not discuss the terms of the Settlement Agreement—presumably because Debtor seeks to seal this document. The Court cannot discern from the Settlement Agreement, temporarily filed under seal in the record pending the outcome of the Seal Motion, pertinent terms of the settlement, including the total proposed compensation to Debtor. The Court further notes that the Complaint in the adversary proceeding to be compromised via the Settlement Agreement (No. 17-2024) requests class action certification, but the settlement does not purport to settle the claims in the Complaint on behalf of the proposed class.

[ECF No. 38.] The Court permitted "any party in interest" to "file further information or supplement the record" prior to the scheduled hearing. [*Id.*]

After this Order's entry, Debtor filed the second Seal Motion [ECF No. 39] and filed under a provisional seal a Supplemental Memorandum in further support of the Motion to Compromise. Debtor explains her request to seal the Supplemental Memorandum as follows:

> Debtor submits that the Supplemental Memorandum in Support of Motion to Compromise, which by this motion she seeks to file under seal, is filed in *[sic]* to provide a further factual basis for the Motion to Compromise, but for the same

---

[6] The Sixth Circuit requires such findings and conclusions in any order that seals records. *See*, *e.g.*, *Shane Group, Inc., et al. v. Blue Cross Blue Shield of Mich., et al.*, 825 F.3d 299, 306 (6th Cir. 2016) (citation omitted).

5

> reasons which she sought to seal the settlement agreement which forms the basis for the Motion to Compromise, this Supplemental Memorandum in Support of Motion to Compromise must also be sealed."

[ECF No. 39 ¶ 7.] The legal argument in the second Seal Motion is virtually identical to that in the first Seal Motion. Debtor did not file any evidence with the second Seal Motion to establish that either the Settlement Agreement or Supplemental Memorandum may be sealed under § 107(b)(1). And, again, Debtor's proposed order (1) does not contain any findings of fact or conclusions of law, and (2) would seal the Supplemental Memorandum in perpetuity absent a subsequent Court order. [ECF No. 39-1.] The Supplemental Memorandum does supply information in response to the Court's questions about the proposed disposition of settlement funds and the fact that the settlement resolves Debtor's claims alone.

Shortly thereafter, the AP Defendants also filed a Supplement to the Seal Motions. [ECF No. 40.] Their Supplement states that "[t]he Defendants are unwilling to enter into the Settlement Agreement unless the terms thereof remain confidential" and "allowing the Settlement Agreement to be filed under seal would promote the efficient disposition of this dispute and further the public policy favoring settlement agreements." [*Id.* at 3.] The Supplement cites *In re Hemple*, 295 B.R. 200 (Bankr. D. Vt. 2003), regarding "non-exhaustive factors in determining whether a settlement agreement may be filed under seal under 11 U.S.C. § 107(b)." [*Id.*] The Supplement further advises that "the Debtor is only requesting that the Sealed Documents be sealed for a period of five years, not indefinitely," which clearly contradicts the proposed orders tendered with Debtor's Seal Motions.[7] [*Id.* at 4.] Like Debtor,

---

[7] The AP Defendants filed a proposed order with their supplement that calls for the sealing of the pertinent documents in the Court's record for five years and provides that "any party in interest to this Bankruptcy Case" may ask AP Defendants' counsel for a copy of the sealed documents, which they may procure only after executing "an acceptable confidentiality agreement." [ECF No. 40-1.] While less restrictive than Debtors' proposed orders, the AP Defendants' order still would limit access to the sealed documents only to a "party in interest" in the bankruptcy case as opposed to the public at large, and would require any party seeking access to accede to terms on a confidentiality agreement presumably to be drafted by the AP Defendants' counsel. Moreover, the AP Defendants'

the AP Defendants did not offer any evidence with their Supplement to establish a basis on which the Court could conclude that either the Settlement Agreement or Debtor's Supplemental Memorandum may be protected from disclosure under § 107(b).

The Court held a hearing on all of these motions on February 6, 2018, and gave the parties 14 days thereafter to supplement the record. The parties opted to stand on their papers.

## ANALYSIS

The Seal Motions ask the Court to seal *entire documents* (i.e., the Settlement Agreement and the Supplemental Memorandum explaining the settlement) in the Court's record *in perpetuity* or until a subsequent order is entered unsealing the documents. Debtors offer no explanation in the Seal Motions why both documents must be sealed in their entireties, and why that seal never should expire. At the hearing, the parties' counsel both agreed that the only information that would need to be sealed is the settlement amount.

While the Sixth Circuit has not evaluated a motion to seal a court record in connection with § 107(b)(1), there can be little doubt that it would find Debtor's requests to seal records to be extraordinary. Indeed, the long-standing maxim in the Sixth Circuit is that "[t]he public has a strong interest in obtaining the information contained in the court record." *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1180 (6th Cir. 1983). However, given that a specific section of the Bankruptcy Code governs restricting public access to documents in the record, it is the Code, and not the Sixth Circuit authority relating to non-bankruptcy motions to seal, that is the starting point for the Court's analysis of the Seal Motions.

---

proposed order states: "counsel for the Debtor shall contact the Clerk's Office regarding the return or disposition of the Settlement Agreement as soon as practicable following the closure of this case." [*Id*.] In other words, notwithstanding the five-year seal contained elsewhere in the proposed order, the AP Defendants suggest that the Settlement Agreement itself would be *pulled from the record of the case*, such that it never would be unsealed.

**I.     Section 107 of the Bankruptcy Code Provides the Framework for Assessing Whether a Bankruptcy Court may Restrict Access to Public Records.**

In bankruptcy matters, Congress has codified a strong presumption in favor of public access to all papers filed therein: "Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). Section 107(b), however, identifies certain narrow categories of documents that, notwithstanding the presumption, may be entitled to protection:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may--
>
>    (1)  protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
>    (2)  protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). Only § 107(b)(1) is at issue here; the parties contend that the Settlement Agreement and its terms constitute confidential "commercial information" under § 107(b)(1). [ECF No. 40 at 4 ("Bankruptcy Rule 9018 provides that on motion, with or without notice, the Court may make any order which justice requires to protect the estate or any entity in respect of confidential commercial information.").]

"'Commercial information' has been defined as 'information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor'" or another party. *In re Frontier Group, L.L.C.*, 256 B.R. 771, 773 (Bankr. E.D. Tenn. 2000) (quoting *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994)). Stated differently "commercial information" is "information that is so critical to an entity's operations that disclosing the information will unfairly benefit that entity's competitors" such that its disclosure "must reasonably be expected

8

to cause commercial injury." *In re Waring*, 406 B.R. 763, 768-769 (Bankr. N.D. Ohio 2009) (citations omitted).

II. **The Parties Have Failed to Establish that the Settlement Agreement and Debtors' Supplemental Memorandum are Entitled to Protection under Section 107(b)(1).**

The Seal Motions ask the Court to restrict public access to documents pertaining to the settlement of an adversary proceeding. The party seeking protection under § 107(b) "has the burden of proving that the information should be protected." *Waring*, 40 B.R. at 768 (citing *In re Fibermark, Inc.*, 330 B.R. 480, 496-97 (Bankr. D. Vt. 2005)). Here, Debtor moved to seal documents (as the parties agreed in the Settlement Agreement), and the Court considers the AP Defendants' Supplement as akin to joining in the Seal Motions. The parties have not established that the Settlement Agreement and Debtor's Supplemental Memorandum constitute "commercial information" subject to protection. The parties' broad statements regarding their desire for confidentiality is not a basis to seal the records at issue from public view.

Neither the Seal Motions nor the Supplement are accompanied by *any* evidence—in the form of an affidavit or otherwise—to demonstrate that the documents at issue are protected as confidential "commercial information" under § 107(b). Thus, the Court has no evidentiary basis whatsoever upon which to conclude that the documents are entitled to protection. *Compare In re Silicon Graphics, Inc.*, Case No. 09-11701, 2009 Bankr. LEXIS 1350, at *2 (Bankr. S.D.N.Y. Apr. 24, 2009) (unpublished) ("The motion to seal the Excluded Schedules was unopposed and was supported by evidence showing that the schedules contain confidential commercial information regarding [the debtor]'s contract counter-parties and the non-public terms of their business arrangements. The Court found that the Excluded Schedules contained confidential commercial information and were entitled to protection under § 107(b)."); *with Motors Liquidation Co. Avoidance Action Trust v. JPMorgan Chase Bank, N.A. (In re Motors*

9

*Liquidation Co.)*, 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016) ("Evidence—not just argument—is required to support the extraordinary remedy of sealing."); *In re Muma Servs.*, 279 B.R. 478, 485 (Bankr. D. Del. 2002) (stating that the movant on a motion to seal had "not provided any evidence that filing under seal outweighs the presumption of public access to court records. In the absence of any such evidence, we cannot conclude that disclosure of the terms of the lease would cause harm."); *In re Found. for New Era Philanthropy*, Case No. 95-13729F, 1995 Bankr. LEXIS 2204, at *15-16 (Bankr. E.D. Pa. May 18, 1995) (denying motion to seal and noting that the debtor/movant failed to come forward with evidence to support its argument on a motion to seal that disclosure would cause harm).

In addition, the parties' arguments in support of sealing the documents at issue are inadequate. In short, Debtors and the AP Defendants want to keep the terms of their settlement confidential and, thus, included a confidentiality provision in their Settlement Agreement. In fact, Debtors and the AP Defendants essentially tell the Court that there will be no settlement in the adversary proceeding if the terms of settlement are not kept confidential. [ECF No. 32 ¶ 16; ECF No. 39 ¶ 13; ECF No. 40 at 3.] However, the parties' statements about the Settlement Agreement's confidentiality provision are not accurate. While the fully-executed Settlement Agreement does contain a paragraph on confidentiality, that provision does not state that the Settlement Agreement will be null and void if the Court does not seal it in the record. Indeed, the Settlement Agreement's terms implicitly confirm that the parties fully understood that the Court would independently determine whether to seal the Settlement Agreement. "If we were to permit [movant] to file documents under seal simply because it unilaterally agreed to keep matters confidential, then the Court would never have control over motion practice in this case and section 107 would be meaningless." *Muma Servs.*, 279 B.R. at 485; *c.f. Togut v. Deutsche*

10

*Bank AG (In re Anthracite Capital, Inc.)*, 492 B.R. 162, 172 (Bankr. S.D.N.Y. 2013) ("The Movants['] argument that the 'no seal, no deal' condition is reason enough for sealing a document under § 107 is not only wrong under the law, it is also illogical.  If that were the standard for sealing, every settlement in a bankruptcy case would be sealed whenever a party insisted that a document be sealed.  Such a test would remove the need for analysis under § 107 and would directly conflict with the statute, the common law, and the legislative history of § 107.").

Further, neither the Seal Motions nor the Supplement provide a valid legal explanation to establish why the confidentiality provision in the parties' Settlement Agreement requires the Court to impose a seal pursuant to § 107(b)(1) and Bankruptcy Rule 9018.  Debtors and the AP Defendants certainly offer case law supporting the uncontroversial proposition that settlements are favored within the Sixth Circuit, and that confidential settlements in litigation are not unusual.  These truisms, however, do not supplant the fact that only limited kinds of confidential records are entitled to protection under § 107(b), such as confidential "commercial information" under § 107(b)(1).

In the bankruptcy context, courts across the country have held that settlement terms (including settlement amount) are not confidential "commercial information" that is subject to seal under § 107(b)(1).  *See*, *e.g.*, *Geltzer,* 2007 U.S. Dist. LEXIS 6794, at *6-14 ("The parties' stipulation of settlement is the central document 'presented to the court to invoke its power[]' to approve the settlement, and the size of the settlement is the critical term in that document.  The sealing request here thus goes to the very core of the 'constitutionally-embedded presumption of openness in judicial proceedings.'  Only the most 'compelling circumstances' could overcome the strong presumption in favor of public availability of such a document.  The Trustee's

submission falls far short of the showing necessary even to raise a serious question with respect to the sealing of the settlement amount." (citations omitted)); *In re Gibbs*, Case No. 11-03070, 2017 Bankr. LEXIS 4322, at *3-4 (Bankr. D. Haw. Dec. 19, 2017) ("The filings make clear that [a party settling with a trustee] is not really concerned about its competitors. Rather, it worries that, if the settlement amount in this case is disclosed, other parties claiming that [the settling party] engaged in wrongful foreclosure conduct will demand similar amounts. This does not amount to 'confidential commercial information' within the meaning of section 107."); *Bornman v. Thompson Pump & Mfg. Co. (In re Bornman)*, AP No. 6-00023-5-DMW, 2016 Bankr. LEXIS 3110, at *4-6 (Bankr. E.D.N.C. Aug. 24, 2016) (rejecting the argument "that public disclosure would undercut the settling defendant's leverage in negotiating with other claimants" as "[s]ettlement agreements are not entitled to greater protection than other requests for relief from bankruptcy courts" and "there is no public interest in sealing the pending Settlement Agreement between the Plaintiff and the Defendant"); *In re Laurel Canyon MK2, LLC*, Case No. 1:15-bk-11763-MB, 2015 Bankr. LEXIS 3396, at *3 (Bankr. C.D. Cal. Oct. 6, 2015) ("[T]he Debtor seeks an order of this Court authorizing the filing under seal of the Settlement Agreement. The only cause articulated for this relief is that the parties agreed at the time of the settlement agreement to maintain its confidentiality. This is not cause to authorize the filing under seal of a settlement agreement."). To the extent the parties argue that their settlement is a private matter, § 107(b) "was not intended to save the debtor or its creditors from embarrassment, or to protect their privacy in light of countervailing statutory, constitutional and policy concerns." *In re Found. for New Era Philanthropy*, 1995 Bankr. LEXIS 2204, at *15-16.

As noted above, the AP Defendants cite *In re Hemple*, 295 B.R. 200 (Bankr. D. Vt. 2003), as authority for when a settlement agreement may be sealed. No court in the Sixth Circuit

has cited *Hemple*. In addition, the bankruptcy court in *Hemple* actually denied a motion to seal the amount of a settlement (not the whole settlement agreement) because the movant had "not demonstrated that the filing of the settlement agreement falls with the articulated exceptions to the Bankruptcy Code's general rule that all documents in a bankruptcy case be available to the public." *Id*. at 202. Another court in the Second Circuit analyzed *Hemple*, noting that it was the only case that court found in which a seal of a settlement amount under § 107(b) "was even sought," and explained that the bankruptcy court in *Hemple* started from the premise that "absent compelling circumstances all documents filed in bankruptcy cases should be available to the public." *Geltzer*, 2007 U.S. Dist. LEXIS 6794, at *10-12 (quoting *Hemple*, 295 B.R. at 202). The court in *Geltzer*, in the context of its own case, rejected a movant's argument that public disclosure of a settlement amount would allow other similar claimants to know how much the movant was willing to pay in settlement. The court labeled this argument "a wan excuse for impinging on the public's right of access to judicial documents" because

> [t]here is no discernable public interest, or interest of the bankruptcy estates, in preserving [the movant]'s 'leverage' as against other parties who have sued it. Nor has the movant indicated any authority to support its implicit proposition that protecting the bargaining position of the defendant in other, unrelated cases, is even a proper consideration of a court being asked to approve a settlement in a given case.

*Id*. at *11-12. *See also Anthracite Capital*, 492 B.R. at 172 ("While it is unclear whether the *Hemple* factors are ever applicable given the plain meaning of § 107, it is clear that these factors should not be considered until after one of the exceptions to § 107 has been met."). Here, the documents do not fall within the confines of § 107(b).

**III.    Sixth Circuit Authority Confirms that Sealing Documents in the Public Record is Disfavored.**

Finally, although the failure to establish that the documents at issue constitute confidential "commercial information" is enough to deny both of the Seal Motions, the Sixth

13

Circuit's multiple pronouncements on sealing access to public records further support the Court's decision. *See, e.g.*, *Shane Grp., Inc., et al. v. Blue Cross Blue Shield of Mich., et al.*, 825 F.3d 299 (6th Cir. 2016); *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589 (6th Cir. 2016). The Sixth Circuit has stated:

> The burden of overcoming that presumption [of public disclosure] is borne by the party that seeks to seal them. *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). The burden is a heavy one: "Only the most compelling reasons can justify the non-disclosure of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). ... And even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason. *See*, *e.g.*, *Press-Enter. Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501, 509-11, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984).

*Shane Grp.*, 825 F.3d at 305-06.

Within this circuit, a court granting a motion to seal must make an independent finding as to "why the interests in support of non-disclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary." *Id*. at 306 (citations omitted). This burden applies even where "neither party objects to the motion to seal" as "[a] court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody." *Id*. To that end, while no party has objected to the Seal Motions, this Court cannot abdicate its responsibility to ensure that public access to court records is restricted only in appropriate circumstances. The parties failed to establish that appropriate circumstances exist here.

## CONCLUSION

While the settling parties may wish to keep their agreement confidential, they have not provided sufficient authority to demonstrate that the terms of settlement of their adversary proceeding constitutes confidential "commercial information" under § 107(b) and Bankruptcy Rule 9018. Debtor has moved this Court to approve the parties' settlement under Bankruptcy

Rule 9019. To do so, the Court must rule on the reasonableness of that settlement, and the public has a right to know the basis for the Court's ultimate assessment.

Wherefore, the Court having considered the Seal Motions and the record, and being duly and sufficiently advised, it is ORDERED that

1. The Seal Motions are DENIED; and

2. Debtor shall file an unrestricted and unredacted copy of the Settlement Agreement in the record of this case within seven days of the entry of this Order. Upon submission of the Settlement Agreement in the record, the Court will rule on the Motion to Compromise.

15

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Thursday, March 01, 2018
(tnw)